IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 26-1294

| | |
|---|---|
| AUNG DOE, *et al.*, | Appeal from the United States District Court for the Northern District of Illinois |
| Plaintiffs-Appellees, | |
| v. | No. 25 C 15483 |
| MARKWAYNE MULLIN, *et al.*, | Matthew F. Kennelly, |
| Defendants-Appellants. | District Judge |

**MEMORANDUM IN SUPPORT OF APPELLANTS' MOTION
FOR SUMMARY REVERSAL OR, ALTERNATIVELY, FOR A STAY OF
THE DISTRICT COURT'S POSTPONEMENT ORDER PENDING APPEAL**

**Introduction**

The then-Secretary of Homeland Security published a notice in November 2025 that "temporary protected status" (TPS) for Burmese nationals would terminate at the end of January 2026. Plaintiffs challenged the termination of Burma's TPS designation, and the district court granted preliminary relief requiring the United States to continue to provide TPS to about 4,000 Burmese nationals indefinitely, finding that the termination likely violated the Administrative Procedure Act. The Supreme Court has now held that judicial review of nonconstitutional challenges to TPS terminations is unavailable. *Mullin v. Doe,* 609 U.S. —, 2026 WL 1825840 (June 25, 2026) (applying 8 U.S.C. § 1254a(b)(5)(A)). The stay issued by the district court was erroneous, and this court should grant the government relief from the district court postponement, either via summary reversal or via a stay pending appeal.

As its name suggests, temporary protected status is supposed to be temporary. Congress enacted TPS to provide temporary protection for foreign nationals due to "extraordinary and temporary conditions" when such protection is consistent with the "national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C). To ensure TPS designations would not continue indefinitely, however, Congress directed the Secretary of Homeland Security, "after consultation with appropriate agencies," to conduct a periodic review of whether a country's TPS designation remains warranted. § 1254a(b)(3)(A). If the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation by publishing notice in the Federal Register." § 1254a(b)(3)(B). And that determination is final: "There is no judicial review of any determination" by the Secretary "with respect to" the "termination . . . of a designation" of a foreign state. § 1254a(b)(5)(A).

Burma (also known as Myanmar) has had a TPS designation since 2021. In November 2025, the Secretary followed the statutory protocol to determine whether the time had come to terminate that designation after five years. After consulting with the United States Department of State and considering, among other things, both the conditions in Burma and the national interest, the Secretary concluded that Burma's TPS designation should be terminated. The Secretary therefore published a notice in the *Federal Register* terminating Burma's TPS designation, effective January 26, 2026 (hereinafter, the "Termination").

That decision might have been the end of the story, but the district court held that the Termination likely violated the APA. So the district court stayed the

2

Termination under 5 U.S.C. § 705 and required the government to continue to provide TPS to approximately 4,000 Burmese nationals for an indefinite period of time. R. 51 & 52. ("R." references are to numbered items in the Record on Appeal.) The Secretary moved for a stay of that postponement order, and on March 10, 2026, the district court denied the motion. R. 66. But the district court's order to override the Secretary's termination of TPS for Burma here was fundamentally flawed because it lacked the authority to enter such an order by virtue of § 1254a(b)(5)(A). This is now clear after the Supreme Court held that § 1254a(b)(5)(A) "applies to all non-constitutional claims," *Mullin v. Doe*, 2026 WL 1825840, at *10, and pointed to the district court's order *in this very case* as one of the courts that had defied that judicial-review bar, *id.* at *5. Summary reversal under Federal Rule of Appellate Procedure 27, or at minimum a stay of the district court's postponement order, is thus merited because the district court's postponement order cannot be reconciled with *Mullin v. Doe*'s holdings, and the Secretary is overwhelmingly likely to succeed on appeal.

The reasons for either summary reversal or a stay in this case are straightforward. First, the Secretary has a strong likelihood of success on the merits. Section 1254a(b)(5)(A) is clear: no court can review "*any* determination" "with respect to" termination of TPS. (Emphasis added.) The district court evaded that bar by reading "any" to mean "some." More specifically, the district court viewed "any determination" as permitting judicial review of "collateral" challenges to the Secretary's process and proceeded by classifying virtually *all* of the plaintiffs' APA challenges as such collateral claims. *See* R. 51 at 15–20. That reading is wrong

3

because arbitrary-and-capricious review of the Termination is definitionally "judicial review of any determination" of the Secretary "with respect to" "termination . . . of a designation," which the statute expressly forbids. § 1254a(b)(5)(A). And the Supreme Court has now held that "determination" includes both an ultimate decision, as well as the process leading up to that decisionmaking. *Mullin v. Doe*, 2026 WL 1825840, at \*7–10.

The remaining equitable factors also favor appellants' arguments for a stay. The government is irreparably harmed by an erroneous order that prevents the Secretary from doing exactly what Congress commanded—review ongoing TPS designations and terminate the designation of countries where appropriate. The district court's order stretches well past the few named plaintiffs in this matter and requires the government to continue to permit thousands of foreign nationals with, by definition, *temporary* status to remain in the United States, with work authorization, despite the Secretary's considered determination that their continued presence is contrary to the national interest. On the other side of the ledger, it is well established that removal, without more, is not an irreparable injury. And none of the named plaintiffs is even in removal proceedings, so their real harms at this moment are based on what *might* happen to them in the uncertain future. *See* R. 1 at 3–6. Thus, the equities favor a stay here. *See Miot v. Trump*, No. 26-5050, 2026 WL 659420, at \*5 (D.C. Cir. Mar. 6, 2026) (Walker, J., dissenting), *rev'd sub nom.*, 2026 WL 1825840 (June 25, 2026).

## Background

### I. Statutory Background

In 1990, Congress established a discretionary program for providing temporary shelter in the United States for foreign nationals from countries experiencing armed conflict, natural disaster, or other "extraordinary and temporary conditions" that temporarily prevent the foreign nationals' safe return or render the country temporarily unable to handle adequately the return of its nationals. 8 U.S.C. § 1254a(b)(1)(C). The Secretary may designate countries for temporary protected status if he determines the statutory conditions for designation are met. § 1254a(b). One such condition is that "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." § 1254a(b)(1)(C). Covered foreign nationals may receive work authorization and cannot be removed. § 1254a(a).

These designations are supposed to be, in the words of the statute, "temporary." Thus, by statute, initial designations and any extensions thereof may not exceed 18 months. § 1254a(b)(2), (3)(C). The Secretary, "after consultation with appropriate agencies," must review each designation at least 60 days before the designation ends to determine "whether the conditions for such designation . . . continue to be met." § 1254a(b)(3)(A). And if he determines that the foreign state "no longer continues to meet the conditions for designation," he "shall terminate the

designation by publishing notice in the Federal Register of the determination," including "the basis for the determination." § 1254a(b)(3)(B).

Judicial review of these determinations is categorically barred by the terms of the statute: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." § 1254a(b)(5)(A). "[T]he TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin v. Doe*, 2026 WL 1825840, at *10.

## II. Burma's TPS Designation

Burma was designated for TPS in May 2021 based on "extraordinary and temporary conditions" in the country, including political instability following a military coup d'état. 86 Fed. Reg. 28 (May 25, 2021). The designation was extended in 2022 and 2024. 87 Fed. Reg. 58,515 (Sept. 27, 2022); 89 Fed. Reg. 20,682 (Mar. 25, 2024).

In November 2025, the Secretary published the challenged notice in the *Federal Register*, announcing that Burma's TPS designation would be terminated on January 26, 2026. 90 Fed. Reg. 53,378 (Nov. 25, 2025). That notice followed the procedures set out in the TPS statute. For example, the Secretary, after consulting with the State Department, reviewed country conditions in Burma. The Secretary considered whether extraordinary and temporary conditions preventing safe return continued to exist, and whether permitting Burmese nationals to remain temporarily in the United States was contrary to the national interest. *Id.* at 53,378–81.

Based on that review, the Secretary determined that conditions in Burma had improved sufficiently. The notice discussed progress in governance and stability, including the end of a state of emergency, plans for elections, ceasefire agreements, and improved local governance. *Id.* at 53,379–80. The Secretary also concluded that permitting Burmese nationals to remain in the United States was contrary to the national interest, citing concerns about visa overstay rates, entry restrictions, and foreign-policy considerations. *Id.* at 53,380–81.

### III. The Instant Appeal and the District Court's Denial of a Stay

The plaintiffs—six Burmese TPS holders—filed suit in December 2025, asserting that the Termination violated the APA and the Fifth Amendment. In January 2026, the district court granted the plaintiffs' motion under 5 U.S.C. § 705 to postpone the Termination. R. 52.

The Secretary moved for a stay pending appeal on February 11, 2026. R. 54. The plaintiffs opposed, R. 61, and the Secretary replied, R. 62. The district court denied the motion on March 10, 2026, concluding that the government had not made a strong showing of likelihood of success on the merits and had not established irreparable harm. R. 66.

The Secretary timely filed a notice of appeal. R. 56. After the Secretary filed that notice of appeal, though, the Supreme Court granted the government's petitions for writs of certiorari before judgment in multiple cases seeking a stay from similar district-court postponements relating to Syria and Haiti. *See Mullin v. Doe*, No. 25-1083 (S. Ct. Mar. 16, 2026); *Trump v. Miot*, No. 25-1084 (S. Ct. Mar. 16, 2026),

respectively. The Secretary thus moved this court to hold the instant appeal in abeyance pending the Supreme Court's dispositions in those cases, Dkt. 23, which this court granted, Dkt. 24. And last Thursday, the Supreme Court resolved the recurring question that controls this appeal. In *Mullin v. Doe*, the Court reversed district-court orders postponing the termination of TPS for Syria and Haiti, holding that § 1254a(b)(5)(A) bars judicial review of all non-constitutional claims. 2026 WL 1825840, at *10. The Court expressly listed the district court's order in this case among those that had *wrongly* permitted such review. *Id.* at *5 (citing *Doe v. Noem*, 822 F. Supp. 3d 893, 901 (N.D. Ill. 2026)).

**Argument**

## I. Legal Standards

Motions for summary disposition under Fed. R. App. P. 27 "generally should be confined to certain limited circumstances." *United States v. Fortner*, 455 F. 3d 752, 754 (7th Cir. 2006). Among these "limited circumstances" is "when a recent appellate decision directly resolves the appeal." *Id.* (citing *United States v. Young*, 115 F.3d 834, 836 (11th Cir. 1997) (per curiam)).

A stay pending appeal is permitted by Fed. R. App. P. 8 and turns on "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether [he] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested . . . ; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (alteration

and ellipsis in original) (quotations omitted). Each factor weighs heavily in favor of a stay here.

## II. The Secretary Is Likely to Succeed on the Merits.

### A. The District Court Lacked Authority to Resolve the Nonconstitutional Claims on Which It Relied.

The district court ruled solely based on Plaintiffs' nonconstitutional claims. *See* R. 51 at 52. But in light of the Supreme Court's decision in *Mullin v. Doe,* it is clear that the district court lacked authority to rule on those claims. The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. § 1254a(b)(5)(A). It therefore unambiguously precludes courts from second-guessing TPS decisionmaking.

The Supreme Court has now confirmed precisely this reading. In *Mullin v. Doe,* the Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." 2026 WL 1825840, at \*10. The Court explained that the operative term "determination" may mean either an individual decision or the process leading to a decision, and that "under either understanding of the term, § 1254a(b)(5)(A) squarely bars all of respondents' non-constitutional claims." *Id.* at \*2; *see also id.* at \*7 (similar). The phrase "with respect to," the Court added, "generally has a broadening effect." *Id.* at \*7 (quoting *Patel v. Garland,* 596 U.S. 328, 339 (2022)). That holding, by itself, guarantees the Secretary's success on appeal because § 1254a(b)(5)(A)'s judicial-review bar is broad and plainly commits to the Secretary's unreviewable authority any determination relating to any TPS

9

termination. Further, its statutory language was enacted against the backdrop that "the Government's political departments [are] largely immune from judicial control" in the immigration context, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), particularly when making sensitive foreign-policy judgments, *see Biden v. Texas*, 597 U.S. 785, 805 (2022).

Plaintiffs' claims fall squarely within § 1254a(b)(5)(A)'s prohibition on judicial review. They attack the Secretary's consultation process, the assessment of conditions in Burma, and dispute a national-interest determination—all to ask the district court to set aside the Termination. That is a direct challenge to "determination[s] . . . with respect to the . . . termination" of Burma's TPS designation. § 1254a(b)(5)(A). There is consequently "no judicial review" available under the TPS statute. *Id.*

The district court concluded otherwise, reasoning that the plaintiffs' claims were permissible "collateral" challenges under *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991). That reasoning is flawed for several reasons.

*First*, the district court read "any determination" to permit review of "collateral" challenges to the Secretary's "pattern and practice" under *McNary*; it treated the plaintiffs' procedural objections—such as the adequacy of the Secretary's consultation—as falling outside the bar; and it reasoned that only the Secretary's ultimate determination, not the "subsidiary" steps leading to it, was insulated from review. R. 51 at 14–20. In denying a stay, the court reaffirmed this same reasoning and discounted the Supreme Court's stays in the other TPS litigations on the ground

10

that those orders from the Supreme Court did "not reveal the reason for the stays." R. 66 at 12. Those reasons are now apparent.

As alluded to above, *Mullin v. Doe* forecloses each premise. It rejected the argument "that § 1254a(b)(5)(A) applies only to substantive claims, not those based on alleged procedural errors," explaining that "a 'determination' may concern procedural or substantive questions." 2026 WL 1825840, at *8. It rejected the still-narrower reading that § 1254a(b)(5)(A)'s bar reaches "only the Secretary's ultimate 'determination'—not any subsidiary decision, such as whether to consult other agencies," because "an agency's subsidiary decisions merge into the final agency action," so that "[i]f the final agency action is unreviewable, then so too are subsidiary determinations." *Id.* at *10 (citing *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019)). And it confirmed that *McNary* turned on the phrase "a determination" in a differently worded statute and "did not adopt the broad principle that the term 'determination' applies only to substantive matters." *Id.* at *8. The district court's "collateral"-challenge rationale for the postponement here cannot survive that decision. *See Britkovyy v. Mayorkas*, 60 F.4th 1024, 1030 (7th Cir. 2023) (distinguishing *McNary*'s analysis of truly collateral challenges from challenges that are squarely within a jurisdictional bar).

*Second*, if anything more were needed, this court has recognized that similar judicial-review bars within the Immigration and Nationality Act ("INA") must be taken seriously. In *Soni v. Jaddou*, 103 F.4th 1271, 1273 (7th Cir. 2024), for example, this court declared that "[n]o review means no review; the statute does not need to

11

list all of the many potential legal theories that are not reviewable." So too in *Dubey v. DHS*, 154 F.4th 534, 537 (7th Cir. 2025), where this court cautioned that "[e]very order of removal under § 1225(b)(1) has a justification. If an alien could avoid § 1252(a)(2)(A)(i) by attacking that justification, the statute might as well be erased from the United States Code." And in *Nobles v. Mullin*, 177 F.4th 886 7th Cir. 2026), this court held that yet another jurisdictional bar within the INA shielded the Secretary's "no-risk" *determinations* for previously convicted sex offenders wishing to sponsor a family member (such as a spouse) for a green card. In so holding, this court specifically ruled that "'Determines' denotes more than the final decision on the petition. It includes the process of reaching that decision, too." *See id.* at 893. The same logic applied in *Mullin v. Doe* and should have been applied by the district court here.

*Third*, and at minimum, § 1254a(b)(5)(A) bars the arbitrary-and-capricious claims on which the district court granted preliminary injunctive relief for the plaintiffs. As the Supreme Court has now confirmed, "[i]f the final agency action is unreviewable, then so too are subsidiary determinations. This important principle ensures that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering." *Mullin v. Doe*, 2026 WL 1825840, at *10 (internal citations omitted). To hold otherwise "would eviscerate the statutory bar, for almost any challenge to [a determination] could be recast as a challenge to its underlying methodology." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019).

This backdrop more than satisfies *Nken*'s "strong showing" standard for likelihood of success.

**B. The District Court's Postponement Order Cannot Be Salvaged by Plaintiffs' Equal-Protection Claim.**

As explained above, *Mullin v. Doe* bars the APA claims on which the district court's postponement exclusively rests, and *that* order cannot stand without them. The district court granted relief solely on the plaintiffs' APA claims and expressly declined to reach their Fifth Amendment equal-protection claim, explaining that "[b]ased on the Court's conclusion that the plaintiffs are likely to succeed on their APA claims, it need not address the merits of their Fifth Amendment claim at this time." R. 51 at 52. The § 705 postponement order entered below thus has a single legal foundation—plaintiffs' APA claims—and *Mullin v. Doe* removes that foundation by explaining how courts lack the authority to issue such an order. An unadjudicated constitutional claim, on which the district court made no finding of likely success, cannot retroactively supply the basis for relief the district court entered on other grounds.

In all events, any effort to defend the order on plaintiffs' equal-protection claim would fail. *Mullin v. Doe* did not address whether such claims are subject to judicial review, but it held a materially identical claim unlikely to succeed on the merits. Assuming the framework of *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), the Court examined the same statements by the President and former Secretary on which the plaintiffs here rely and concluded that "[n]one of the cited statements . . . was overtly racial, and in substance all expressed policy

13

views that could rest on race-neutral justifications." 2026 WL 1825840, at *12. Indeed, the plaintiffs' own theory in this litigation—that the Secretary made a "preordained decision" to end TPS for every country that came up for review—supplies a "strong, race-neutral explanation" for the terminations. *Id.* The Supreme Court further observed that the affected countries are a racially diverse group covering different continents (expressly including Burma). *Id.* "Viewing all the relevant evidence," the Court held the plaintiffs "unlikely to prove that race was a motivating factor." *Id.* at *13. The same conclusion follows here, where the plaintiffs press exactly the same statements and the same "non-white nations" inference. *See* R. 51 at 7–8.

There is, moreover, a substantial argument that § 1254a(b)(5)(A) bars the equal protection claim as well. *See id.* at *13–16 (Thomas, J., concurring) (concluding that the bar's text—"no judicial review"—reaches constitutional claims). The Court did not need to resolve that question, though, because the claim independently fails on the merits under *Mullin v. Doe.* Either way, however, the district court's indefinite postponement here cannot rest on plaintiffs' Fifth Amendment claim, and the Secretary is likely to succeed on appeal.

## III. The Equitable Factors Also Favor a Stay.

In the event this court elects not to summarily reverse the district court, the remaining equitable factors still favor a stay. *Nken*, 556 U.S. at 435. As the Supreme Court necessarily concluded—twice—in analogous TPS cases, the government and public share an interest in adherence to the process established by Congress, under

which the Secretary has unreviewable authority over TPS designations. *Noem v. Nat'l TPS Alliance*, 605 U.S. 909 (2025) (*NTPSA I*); *Noem v. Nat'l TPS Alliance*, 606 U.S. 1062 (2025) (*NTPSA II*); *cf. also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("That Maryland may not employ a duly enacted statute to help prevent these injuries constitutes irreparable harm.").

**Irreparable harm to the government.** By usurping the Secretary's express decisionmaking authority for itself, the district court's decision represents "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305–06 (1993) (O'Connor, J., in chambers). And this concern is especially acute in a context that implicates "a fundamental sovereign attribute exercised by the Government's political departments[,] largely immune from judicial control." *Fiallo*, 430 U.S. at 792. Put simply, setting aside the Termination for thousands of foreign nationals (well beyond the named plaintiffs in the case) overrides the Secretary's considered judgment on a matter of foreign affairs and requires the United States to continue to permit thousands of foreign nationals to remain within its borders, and such judicial overstepping is especially problematic here given the Secretary's finding that doing so is contrary to the national interest. *See, e.g.*, *Harisiades v. Shaughnessy*, 342 U.S. 580, 596–97 (1952) ("The conditions for entry of every alien, the particular classes of aliens that shall be denied entry altogether, the basis for determining such classification, *the right to terminate hospitality to aliens, the grounds on which such determination shall be based*, have been recognized as matters solely for the

responsibility of the Congress and *wholly outside the power of this Court to control.*" (emphases added)). That alone establishes the requisite irreparable harm for a stay.

Such harm is particularly severe where the government is making "efforts to prioritize stricter enforcement of the immigration laws enacted by Congress," and the courts should "decline to step outside [their] constitutionally assigned role to improperly restrict reasonable Executive Branch enforcement of the immigration laws." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 4–5 (2025) (Kavanaugh, J., concurring) (emphasis removed). The district court rushed past this problem and instead provided universal injunctive relief to all Burmese TPS holders without class certification, which "'improper[ly] intru[des]' on 'a coordinate branch of the Government' and prevents the Government from enforcing its policies against nonparties." *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025) (alterations in original).

***Balance of equities and public interest.*** The equities also favor a stay because the public interest is served by respecting Congress's purpose in enacting §1254a: permitting the Secretary to determine whether a TPS designation should either remain, or be terminated, and to effectuate that determination in a timely manner—without judicial interference. "[T]he interest in preserving national security is an urgent objective of the highest order." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 581 (2017) (per curiam). The significance of the public interest in the enforcement of the United States' immigration laws is equally well settled. *See Nken*, 556 U.S. at 435.

On the other side, the plaintiffs maintain that the Termination *could* lead to the loss of employment or health benefits, possible removal, and family separation following future removal proceedings. But TPS was never meant to be a replacement for foreign nationals seeking a more permanent status in the United States through other means. *See, e.g.*, 136 Cong. Rec. 27,130 (Oct. 2, 1990) (statement of Rep. Oakar) (emphasizing the temporary nature of the bill, noting that proponents "were not asking that these people be given permanent resident status" or "be allowed to live indefinitely in this country," but "that they be spared deportation until war in their land subsides"). And the end of TPS's inherently temporary protection is nowhere close to a final order of removal, and the loss of associated benefits is equally inherent in the temporary nature of what Congress crafted with the program.

Finally, the Supreme Court has already ruled when deciding on a stay motion that "removal alone cannot constitute the requisite irreparable injury" to justify a stay. *Nken*, 556 U.S. at 435. While plaintiffs have pointed to the Presidential Proclamation barring entry of Burmese nationals as a potential barrier for them to one day return to the United States, the Supreme Court in *Nken* rejected a similar argument even in the more harrowing scenario of a foreign national facing a final order of removal. *Id.* at 435–36 ("Although removal is a serious burden for many aliens, it is not categorically irreparable[.]"). In other words, the existence of an entry restriction that some plaintiffs may have to confront someday in the future does not transform the routine consequences of the end of an inherently temporary

17

immigration status into irreparable injury that outweighs the government's sovereign interest.

In sum, the equities strongly favor the government given the separation of powers concerns where, as here, a district court has assumed control of Burma's TPS designation, despite the judicial-review bar, and the harms to plaintiffs are inherently speculative.

## Conclusion

This court should summarily reverse the district court's APA postponement of the Termination. Alternatively, this court should grant a stay of the district court's postponement order pending appeal.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press

JOSHUA S. PRESS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7625
joshua.press@usdoj.gov

**Certificate of Compliance with Rule 32(g)**

This brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains 4,366 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B).

s/ Joshua S. Press
JOSHUA S. PRESS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7625
joshua.press@usdoj.gov

**Certificate of Service**

I hereby certify that on July 3, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Joshua S. Press

JOSHUA S. PRESS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7625
joshua.press@usdoj.gov