No. 26-1294

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

AUNG DOE, *et al.*,

*Plaintiffs-Appellees*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department
of Homeland Security, *et al.*,

*Defendants-Appellants*.

---

Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:25-cv-15483—Matthew F. Kennelly, Judge.

---

**PLAINTIFFS-APPELLEES' POSITION STATEMENT REGARDING SUMMARY
REVERSAL, REMAND, AND OPPOSITION TO THE IMMEDIATE ISSUANCE OF
THE MANDATE AND MOTION TO STAY**

**Introduction**

Now come Appellees-Plaintiffs Aung Doe, Nina Doe, Thura Doe, Khin Thet Doe, Chu Let Doe, and Maung Doe ("Plaintiffs"), by and through the undersigned counsel, and provide their position statement on the Court's disposition of this appeal. Plaintiffs emphasize the lack of any urgency requiring the Court to do what the government essentially asks— which is to immediately effectuate the termination of Temporary Protected Status (TPS) for Burma. On the contrary, the risk of irreparable harm to Plaintiffs justifies remanding the appeal in a non-expedited manner that affords Plaintiffs the opportunity to seek interim relief on alternative grounds.

1

Plaintiffs and nearly 4,000 TPS holders from Burma now face the possibility of losing vital legal protections prior to the consideration of their constitutional claims. While Plaintiffs concede that the underlying postponement order is no longer valid under the holding in *Mullin v. Doe*, No. 25–1083, 2026 WL 1825840 (U.S. June 25, 2026), they intend to expeditiously amend their complaint and seek interim relief from the District Court based on claims that the Supreme Court did not abrogate.

If the Court reverses and enters the mandate ending interim relief immediately, Plaintiffs and other Burmese TPS holders will experience substantial and irreparable harms. For example, Plaintiffs Chu Let Doe and Nina Doe each face the possibility of arrest and detention, family separation, and deportation to a country where they would be detained as political prisoners, all of which are irreparable harms. R. 1 at ¶¶ 166, 179-80.

And even a brief lapse in TPS can irreparably harm some class members' ability to obtain other forms of immigration relief by stripping them of lawful status. Since maintaining lawful status is a prerequisite to some forms of immigration relief, the lawful status that TPS confers is key to ensuring class members can seek alternative status. *See e.g.* 8 C.F.R. § 248.1(b) (change of nonimmigrant status "may not be approved for an alien who failed to maintain" lawful status).

Defendants contend there is no irreparable harm because "none of the named plaintiffs is even in removal proceedings," Dkt. 27-2 at 4. But that misunderstands the injuries. The harms flowing from TPS termination are immediate; they do not depend on the initiation of removal proceedings. Loss of lawful status and work authorization takes effect the moment TPS terminates, and the risks of removal and foreclosure of immigration relief follow from that termination, not from the later initiation of formal proceedings.

Therefore, while Plaintiffs do not oppose this Court remanding the order to the District

Court for further proceedings and with instructions to vacate the postponement order solely on the ground that Plaintiffs' statutory claims are non-justiciable, Plaintiffs urge this Court to issue its mandate in normal course under Fed. R. App. P. 40(d)(1) and 41(b) and provide 21 days for the issuance of the mandate. Three primary factors weigh against immediate issuance of the mandate in this case. *See infra* pp. 4-6. First, Plaintiffs will move expeditiously in the District Court for preliminary relief on alternative legal grounds, and a non-expedited mandate will provide time for the District Court to assess these alternate grounds. Second, the Supreme Court chose not to issue an immediate mandate in the TPS cases before it, though it had the authority to do so. Third, Plaintiffs and other TPS holders will be irreparably harmed by even a brief lapse in their TPS protections, making even a short window of time for consideration of their alternative claims vital.

I.    **Plaintiffs Do Not Contest Reversal on the Non-Constitutional Basis for Preliminary Relief and Support Remand to the District Court.**

Plaintiffs do not dispute that there are grounds for reversal based on the holding in *Mullin* that the TPS statute's judicial-review bar applies to Plaintiffs' non-constitutional claims. *See Mullin*, 2026 WL 1825840, at *7 (interpreting 8 U. S. C. §1254a(b)(5)(A) to bar review of non-constitutional claims). Reversal on these grounds reflects that the current postponement order under 5 U.S.C. § 705 is no longer valid because it relies on non-constitutional claims. A reversal should touch neither the constitutional claims nor the equities. Instead, the only proper basis for reversal here is that the District Court lacked jurisdiction to provide relief on the non-constitutional claims. As discussed *infra* pp. 5–6, Plaintiffs intend to amend their complaint to add new legal claims by Tuesday, July 14, and move for new preliminary relief by July 20, 2026.

As stated in their position statement filed June 30, 2026, Plaintiffs support remand of the case to the District Court to ensure consideration of their reserved constitutional claim, as well as new, non-barred claims Plaintiffs intend to imminently add to an amended complaint. This will

3

ensure efficient appellate review of all relevant issues if a future appeal is warranted. *See Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1139 (7th Cir. 1992) (remanding case to the district court to allow for further consideration of good faith defense, noting the lack of factual record or analysis from the district court). The District Court is the appropriate court to evaluate the constitutional claims in the first instance, and any appeal can be considered after the District Court reviews the law and facts together. *See W. M. C. A., Inc. v. Simon*, 370 U.S. 190, 191 (1962) ("[T]he court below should be the first to consider the merits of the federal constitutional claim. . . .").

## II.     Plaintiffs Oppose Immediate Issuance of the Mandate.

Plaintiffs oppose expedited issuance of the mandate, which would immediately effectuate the TPS termination and end legal protections for thousands of TPS holders. Instead, Plaintiffs request issuance of the mandate in the normal course under Fed. R. App. P. 40(d)(1) and 41(b), which, read together, provide that the mandate should ordinarily issue 21 days after the Court's decision.[1] The procedural posture of this case and the *Mullin* case, as well as the substantial rights of the parties, weigh against an expedited mandate directing the District Court to reverse its postponement order. There are three primary reasons why Plaintiffs request issuance of the mandate only after 21 days.

---

[1] Plaintiffs note the Court generally affords 52 days in cases involving the U.S. government based on Fed. R. App. P. 40 and 41. However, Plaintiffs request the typical 21 days because they will move expeditiously in the District Court to seek alternative grounds for preliminary relief. Furthermore, at a minimum, Plaintiffs request this Court not to enter the mandate prior to July 27, 2026, as not even the mandate in *Mullin* will apply prior to July 27, 2026. There is no reason for Plaintiffs and other TPS holders to be stripped of their status so quickly and on a faster timeline than all other TPS holders impacted by the *Mullin* decision, leaving them such limited time to seek alternative relief.

4

**1. Plaintiffs Are Moving Expeditiously in the District Court on Alternative Grounds for Preliminary Relief.**

The posture of the instant case counsels against expediting this Court's mandate. Crucially, issuance of the mandate in the normal course of this Court's procedures will afford Plaintiffs time for the District Court to consider their alternate grounds for interim relief. While Plaintiffs also moved for postponement on the basis of an equal protection violation, the District Court originally declined to address the merits of that claim after finding postponement warranted on statutory grounds. R. 51 at 52. *See also Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (the last resort rule of the constitutional avoidance doctrine advises courts to resolve cases on non-constitutional grounds when possible). Now that *Mullin* has abrogated Plaintiffs' statutory claims, however, Plaintiffs intend to expeditiously ask the District Court to consider interim relief based on claims that remain justiciable. Given the substantial and irreparable harm that Burmese TPS holders will face immediately upon dissolution of the postponement order, Plaintiffs request the chance to ask the District Court to consider other grounds meriting interim relief without losing their protections prior to the court's consideration.

In order to quickly seek preliminary relief on other grounds, Plaintiffs will propose a schedule in the District Court that ensures the non-barred claims will be fully briefed before this Court's mandate – if the mandate is issued in normal course under the Federal Rules of Appellate Procedure. Thus, providing 21 days between this Court's reversal order and the mandate will guarantee the District Court has sufficient time to consider Plaintiffs' alternate grounds for relief.

**2. The Supreme Court Did Not Issue Its Mandate Immediately in Similar Cases.**

Procedurally, the Supreme Court has not yet issued its mandate in the *Mullin* case and will not issue a mandate until at least July 27, 2026. *See Dahlia Doe v. Mullin*, No. 25-2995, Dkt. 54.1 (2d Cir. June 25, 2026) (Supreme Court letter stating, "[t]he judgment or mandate of this Court

will not issue for at least thirty-two days pursuant to Rule 45."). Had the Supreme Court determined that there was a necessity for its judgment ending protections for Haitian and Syrian TPS holders to take immediate effect, it could have expedited issuance of the mandate, as it has done in other cases. *See Callais v. Louisiana*, No. 25A1197 (U.S. May 4, 2026) (order) (immediately issuing a certified copy of the judgment to the lower court); *see also Alexander v. Holmes Cnty. Bd. of Educ.*, 396 U.S. 19–21 (1969) (in school de-segregation case, ordering that "the judgment shall issue forthwith and the Court of Appeals is requested to give priority to the execution of this judgment as far as possible and necessary.").

Circuit Courts have also declined to act on an emergency basis to end TPS protections based on the *Mullin* decision. *See Dahlia Doe v. Mullin*, No. 25-2995, Dkt. 60 (2d Cir. July 10, 2026) (denying request for administrative stay); *Miot v. Trump*, No. 26-5050, Dkt. 36 (D.C. Cir. July 2, 2026) (ordering briefing deadline without entering administrative stay). Nor do this Circuit's rules call for immediate issuance of the mandate under the present circumstances. *See* 7th Cir. R. 41 (mandate issues immediately when appeal dismissed voluntarily or for failures of the appellant to satisfy certain procedural requirements). In short, there is no reason that TPS protections should be rescinded faster here than in any other TPS case.

### 3. Plaintiffs and Other Burmese TPS Holders Will Be Irreparably Harmed by Immediate Issuance of the Mandate, and Defendants Face No Similar Irreparable Harm.

As the District Court found, Plaintiffs would be immediately subject to arrest and detention pending deportation if the termination goes into effect. R. 51 at 52. In light of the administration's recent push for mass immigration arrests – which has roughly doubled the rate of arrests to 2,000 a day – the risk of arrest and detention facing Burmese TPS holders is imminent and concrete. *See* Hamed Aleaziz, *Immigrant Arrests Surge to 10,000 in 5 Days as ICE Clamps Down*, N.Y. Times,

July 1, 2026, https://www.nytimes.com/2026/07/01/us/politics/ice-immigrant-arrests-surge.html (describing major surge of arrests by federal immigration officials, including during traffic stops and on the streets). Termination of Burma's TPS would also trigger the loss of Plaintiffs' permission to work, their livelihoods, and ability to pursue long-held professions. *Id.*

Furthermore, as discussed *supra* pp. 2-3, for TPS holders who have no other lawful immigration status, the loss of TPS protections—even for a few days—may have long-term negative consequences on their ability to qualify for other forms of immigration relief. R. 51 at 53. Loss of a continuous status has negative implications for many seeking lawful permanent residence. For example, an applicant who is not an immediate relative of a U.S. citizen generally may not adjust if they are "in unlawful immigration status on the date of filing" or have failed to "maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). For many class members, TPS is what supplies the requisite lawful status. *See* 8 U.S.C. § 1254a(f)(4). Therefore, if TPS termination even temporarily disrupts a class member's lawful immigration status, the government may argue that the class member has also lost their ability to obtain lawful permanent residence.

Plaintiff Nina Doe's circumstances provide another example of how a brief disruption in TPS protections may have long-term negative consequences on the ability to adjust status. Nina is married to a U.S. citizen and has a young U.S. citizen child. R. 27-55 at ¶ 2. A change in Nina's TPS status could have devastating impacts on her ability to adjust her status. She currently has a pending waiver application that, if approved, will allow her to change her status without leaving the United States. *Id.* at ¶ 23. Her TPS is what makes that possible: it protects her from removal while her waiver is pending. If she loses her TPS, she could be removed before she can obtain the waiver and adjust her status. R. 27-55 at ¶ 23. The impact of removal would make Nina lose the

ability to adjust. If she attempted to obtain lawful permanent residence through consular processing abroad, she would currently be barred as part of the Trump Administration's Travel Ban, which applies to all Burmese nationals. Proc. No. 10998 § 2(b), 90 Fed. Reg. 59717 (Dec. 19, 2025). Thus, losing her status could make Nina particularly at risk of separation from her U.S. citizen husband and child with no current viable options for return to the United States. That is a harm no later relief can repair. This is true even if the District Court dissolves the postponement order and immediately orders interim relief on alternative grounds the very next day.

Multiple Plaintiffs also assert genuine fear of harm they would face if forced to return to Burma. *Id*. For example, Plaintiff Nina Doe, a medical doctor whose work serving ethnic minority communities in Burma has made her an enemy of the military regime, believes she will face arrest and detention in Burma if deported. R. 27 at 35. Plaintiff Thura Doe faces deportation to a country where homosexuality is a crime, and he is at risk of arrest and retaliation for both his political advocacy and identity. *Id.* Burmese families of mixed immigration status, including families where some members are U.S. citizens, would face the difficult decision of separating or moving to a dangerous country where they face significant risk of harm. *Id.* at 54.  The Supreme Court's decision in *Mullin* did not undermine or change the analysis regarding the imminent and severe harms Plaintiffs face because of the termination of their TPS. *See Mullin*, 2026 WL 1825840, at *17 (Kagan, J., dissenting) ("There is no dispute that the plaintiffs will suffer irreparable harm absent postponement of the TPS decisions.").

On the other hand, Defendants have documented no actual harm to the government in the several months that Burmese TPS holders have continued to live and work in safety in the United States during the pendency of this appeal. *See* Dkt. 27-2 at 15-16. There is no reason another 21 days of protection and work authorization for Burmese TPS holders would cause any concrete

harm to the government. Defendants argue that the postponement restrains it from enforcing a statute, and that restraint is itself irreparable harm. *Id.* at 16. But, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). This weighs in favor of permitting some time for the District Court to evaluate Plaintiffs' alternative grounds for relief. In addition, Defendants argue generalized national security-related harm caused by the inability to immediately implement the termination. Dkt. 27-2 at 16. The Second Circuit has already rejected the same theory of harm in a companion TPS case. Denying the government a stay of the order postponing Syria's TPS termination, the court held that the government's failure to demonstrate irreparable harm was "a sufficient basis to deny the stay," found its generalized public-safety and national-interest assertions "not sufficiently 'actual and imminent' to justify immediate intervention" and concluded that the balance of equities and public interest "decidedly favor" the TPS holders. Order Denying Stay, *Doe v. Mullin*, No. 25-2995 (2d Cir. Feb. 17, 2026).

In sum, immediate issuance of the mandate is neither necessary nor equitable in these circumstances. Instead, following the normal course of procedure would permit Plaintiffs time to pursue their other grounds for legal relief and otherwise plan for the significant impact that loss of TPS protections will have on themselves and their families.

## III. Plaintiffs' Oppose the Issuance of a Stay.

To the extent the Court is considering the government's request for a stay, a stay is inappropriate at this juncture. The justification for a stay of an order pending appeal is predicated on the appellate court's need for time to consider the issues presented, without prejudicing an irreparably harmed party through delayed resolution. Where there are no longer any substantive issues in consideration on appeal, this central justification for a stay pending appeal evaporates.

*See* Dkt. No. 27-2 at 8 (Supreme Court "resolved the recurring question that controls this appeal").

As the Supreme Court made clear in *Nken v. Holder*, a stay pending appeal is a "means of ensuring that appellate courts can responsibly fulfill their role in the judicial process." 556 U.S. 418, 427 (2009). The justification for such a stay is that "[i]t takes time to decide a case on appeal." *Id.* at 421. "No court can make time stand still," but "if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review." *Id.* (citation modified). Thus, to ensure careful judicial review while protecting the rights of the parties, courts may issue stays to "hold a ruling in abeyance to allow an appellate court the time necessary to review it." *Id.*

There is no justification for issuing a stay pending appeal in this case, where there are no longer any substantive issues pending appeal and the case should be remanded to the district court to allow for resolution and further proceedings on the constitutional claims. *See W. M. C. A.*, 370 U.S. at 191 ("[T]he court below should be the first to consider the merits of the federal constitutional claim"). Defendants have provided no basis for the Court to interfere with the District Court's inherent case management authority and role as the initial decisionmaker by issuing a stay before the case can be remanded for further proceedings.

### Conclusion

For these reasons, Plaintiffs request the Court issue the mandate in the normal course under Fed. R. App. P. 40(d)(1) and 41(b), which, read together, provide 21 days before entry of the mandate.

Respectfully submitted this 13th day of July, 2026.

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
*/s/ Dinesh McCoy*
Dinesh McCoy
Phi Nguyen
Razeen Zaman
Niji Jain
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
dmccoy@aaldef.org
pnguyen@aaldef.org
rzaman@aaldef.org
njain@aaldef.org

THE LAW OFFICES OF JUNE J. HTUN
*/s/ June Htun*
June Htun
3643 West Belmont Avenue
Chicago, Illinois 60618
(773) 362-5000
june@htunlaw.com

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
*/s/ Guadalupe Aguirre*
Guadalupe Aguirre
Ghita Schwarz
Pedro Sepulveda
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Megan Hauptman
650 Massachusetts Ave
NW Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

*Counsel for Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of July, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Service will be made on all ECF-registered counsel by operation of the Court's electronic system.

/s/ Dinesh McCoy
Dinesh McCoy

*Counsel for Appellees*